## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAIR NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2013- |
| | ) | |
| vs. | ) | |
| | ) | |
| PAIRSHARE, LLC | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, pair Networks, Inc. ("pair Networks"), by and through its legal counsel, avers as follows:

### Statement of the Case

1.      This is an action brought by pair Networks, Inc. (the use of the lower case "p" is intentional - hereinafter "pair Networks") arising out of the Defendant's operation of www.pairshare.com, promoting and offering a downloadable software application called "PAIRSHARE" for mobile computing devices through Apple's iTunes store, and using PAIRSHARE as a Twitter and Facebook username.  As shown below, this activity infringes on pair Networks' U.S. trademark registrations, most of which are incontestable and all of which pre-date when Defendant began using the infringing PAIRSHARE mark. All of the Defendant's past, current, and future unauthorized use has, is, and will dilute pair Networks' federally-registered and world famous PAIR Family of Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  By making unauthorized use, in interstate and

intrastate commerce, of the mark "PAIRSHARE" and or variations thereof in connection with goods and services that are not part of pair Networks or otherwise affiliated with, endorsed, or sponsored by pair Networks, Defendant violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and pair Networks' state and common law rights. Plaintiff pair Networks seeks an injunction preventing further use of PAIRSHARE and PAIRSHARE.COM and such other relief as this Court deems appropriate.

**The Parties**

2.      pair Networks, Inc. is a Pennsylvania corporation having its principal place of business at 2403 Sidney Street, Suite 210, Pittsburgh, Pennsylvania 15203. pair Networks has registered the Internet domain names *pair.com*, *pair.net*, and *pair.org*, among many other Internet domain names incorporating the pair name. Plaintiff uses these domain names in providing web site hosting, domain registration, and related services on the Internet throughout the United States and for customers throughout the World.

3.      PAIRSHARE, LLC ("Defendant") is a California limited liability company with a registered address and doing business at 3856 Willowview Court, Santa Rosa, California 95403. Defendant has registered the domain name pairshare.com in connection with providing a downloadable software application called "PAIRSHARE" for mobile computing devices.

**Jurisdiction**

4.      The First, Second, and Third Causes of Action arise under the United States

Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. §§ 1051-1127.  Jurisdiction in this

Court is proper pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court

also has subject matter jurisdiction over the Fourth Cause of Action for state and common

law claims of trademark infringement and unfair competition pursuant to 28 U.S.C. §§ 1338

and 1367 (supplemental jurisdiction) in that the claims are joined with a substantial and

related claim under the Lanham Act.

5.      This Court may exercise personal jurisdiction over a non-resident of the State

in which the Court sits to the extent authorized by the state's laws.  Fed.R.Civ.P. 4(e).

Pennsylvania authorizes personal jurisdiction over the Defendant pursuant to 42 Pa.Cons.Stat

§5322 (a) which provides in pertinent part:

> A tribunal of this Commonwealth may exercise personal jurisdiction over a person ...
> as to a cause of action or other matter arising from such person: (1) Transacting any
> business in this Commonwealth
>
> ***
>
> Without excluding other acts which may constitute transacting business for the
> purpose of this paragraph:
>
> ***
>
> (ii) The doing of a single act in this Commonwealth for the purpose of thereby
> realizing pecuniary benefit...
>
> ***
>
> (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4)
> Causing harm or tortious injury by an act or omission outside this Commonwealth.
>
> ***

(10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit.

6.      In particular, the Defendant's numerous violations of the trademark laws occurred in Pennsylvania.  Accordingly, Defendant is properly haled into court in Pennsylvania.

## Venue

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), in that a substantial part of the events giving rise to the claims occurred in this District and pair Networks is suffering continuing and irreparable harm in this District.

### *Common Factual Background*

### *The Internet*

8.      The Internet is a world-wide network of computers that interconnects smaller groups of computer networks and sites through which businesses and individuals can communicate with each other.  On the World Wide Web, which is one part of the Internet, information can be presented on pages of graphics and text ("Web Site").  Commercial enterprises or individuals may use such Web Sites to display information about their goods or services, or may purvey other material.

9.      The operation of the Internet is decentralized.  It is accessible to users internationally and is not controlled, owned or administered by any one body.  It would not be technically feasible for a single entity to control or monitor information on the Internet.

10.     Every computer connected to the Internet has a unique, numerical address. These addresses, which are known as Internet Protocol ("IP") numbers, are necessary for computers to communicate with each other over the Internet.  An example of an IP number might be:  98.37.241.30.  Because IP numbers can be cumbersome and difficult for Internet users to remember or use, the IP number system has been overlaid with a more user-friendly system of domain names.  This system allows Internet addresses to be assigned an alphanumeric designation--or domain name--correlated to an IP number.

11.     Specialized computers known as "domain name servers" maintain tables linking domain names to IP numbers.  When connecting one Internet computer to another, the Internet has been designed automatically to look up the IP number corresponding to the "domain name" entered by the Internet user.  This system operates invisibly to Internet users.

12.     Internet domain names are of special importance since there is no satisfactory Internet equivalent to a telephone directory or directory assistance, and domain names can often be guessed.  A domain name mirroring a corporate name or trademark may be a valuable corporate asset in facilitating communication with a customer base.  On the other hand, a domain name incorporating the corporate name or trademark of another entity creates substantial dilution, blurring, tarnishment, and consumer confusion since an Internet user may reasonably assume that the domain name is sponsored by, affiliated with, or somehow approved by the owner of the corporate name or trademark.

13.     Domain names are composed of at least two parts, which are called "domain levels."  Each domain level is separated by a period, which is referred to as a "dot."  Top level domains on the Internet are referred to by their Internet "zone" designations, such as

".com," ".org," ".net," ".gov," ".edu," ".mil" etc.  These zones or top level domains are found

to the right of the dot.  "Second level" domains, which are commonly referred to as the

"domain name," are those characters immediately to the left of the top level domain, such as

"PAIR" in the domain name "PAIR.COM" or "PAIRSHARE" in the domain name

"PAIRSHARE.COM".

14.     The uniqueness of Internet addresses is ensured by the registration services

provided by registrars of domain names.  Domain names ending with .biz, .com, .info, .name,

.net or .org can be registered through many different registrars that compete with one another.

GoDaddy, for example, is the registrar for the *pairshare.com* domain name.  A user who

registers a domain name becomes a "holder" or "registrant" of the domain name.

15.     In registering an Internet domain name, a registrant, in this case

DEFENDANT, located anywhere in the world, contacts a registrar and enters into a

Registration Agreement with that registrar.  By registering a domain name, the registrant

agrees to be bound by a Standard Registration Agreement and Domain Name Dispute Policy

which provide in pertinent part:

4. GENERAL RULES OF CONDUCT

You acknowledge and agree that:

\*\*\*

iii. You will not use this Site or the Services found at this Site in a manner (as
determined by Go Daddy in its sole and absolute discretion) that:

- Is illegal, or promotes or encourages illegal activity;

- Promotes, encourages or engages in child pornography or the exploitation of
children;

- Promotes, encourages or engages in terrorism, violence against people, animals, or property;

- Promotes, encourages or engages in any spam or other unsolicited bulk email, or computer or network hacking or cracking;

- Violates the Ryan Haight Online Pharmacy Consumer Protection Act of 2008 or similar legislation, or promotes, encourages or engages in the sale or distribution of prescription medication without a valid prescription;

- Infringes on the intellectual property rights of another User or any other person or entity;

- Violates the privacy or publicity rights of another User or any other person or entity, or breaches any duty of confidentiality that you owe to another User or any other person or entity;

- Interferes with the operation of this Site or the Services found at this Site;

- Contains or installs any viruses, worms, bugs, Trojan horses or other code, files or programs designed to, or capable of, disrupting, damaging or limiting the functionality of any software or hardware; or

- Contains false or deceptive language, or unsubstantiated or comparative claims, regarding Go Daddy or Go Daddy's Services.

(GoDaddy Registration Agreement, ¶4, iii)

### 7. MONITORING OF CONTENT; ACCOUNT TERMINATION POLICY

Go Daddy generally does not pre-screen User Content (whether posted to a website hosted by Go Daddy or posted to this Site). However, Go Daddy reserves the right (but undertakes no duty) to do so and decide whether any item of User Content is appropriate and/or complies with this Agreement. Go Daddy may remove any item of User Content (whether posted to a website hosted by Go Daddy or posted to this Site) and/or terminate a User's access to this Site or the Services found at this Site for posting or publishing any material in violation of this Agreement, or for otherwise violating this Agreement (as determined by Go Daddy in its sole and absolute discretion), at any time and without prior notice. Go Daddy may also terminate a User's access to this Site or the Services found at this Site if Go Daddy has reason to believe the User is a repeat offender. If Go Daddy terminates your access to this Site or the Services found at this Site, Go Daddy may, in its sole and absolute discretion, remove and destroy any data and files stored by you on its servers.

(GoDaddy Registration Agreement, ¶7)

8. ADDITIONAL RESERVATION OF RIGHTS

Go Daddy expressly reserves the right to deny, cancel, terminate, suspend, lock, or modify access to (or control of) any Account or Services (including the right to cancel or transfer any domain name registration) for any reason (as determined by Go Daddy in its sole and absolute discretion), including but not limited to the following: (i) to correct mistakes made by Go Daddy in offering or delivering any Services (including any domain name registration), (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry, (iii) to assist with our fraud and abuse detection and prevention efforts, (iv) to comply with court orders against you and/or your domain name or website and applicable local, state, national and international laws, rules and regulations, (v) to comply with requests of law enforcement, including subpoena requests, (vi) to comply with any dispute resolution process, (vii) to defend any legal action or threatened legal action without consideration for whether such legal action or threatened legal action is eventually determined to be with or without merit, or (viii) to avoid any civil or criminal liability on the part of Go Daddy, its officers, directors, employees and agents, as well as Go Daddy's affiliates, including, but not limited to, instances where you have sued or threatened to sue Go Daddy.

(Go Daddy Registration Agreement, ¶8)

3. CANCELLATIONS, TRANSFERS, AND CHANGES

We will cancel, transfer or otherwise make changes to domain name registrations under the following circumstances:

i. subject to the provisions of Paragraph 8, our receipt of written or appropriate electronic instructions from you or your authorized agent to take such action;

ii. our receipt of an order from a court or arbitral tribunal, in each case of competent jurisdiction, requiring such action; and/or

iii. our receipt of a decision of an Administrative Panel requiring such action in any administrative proceeding to which you were a party and which was conducted under this Policy or a later version of this Policy adopted by ICANN. (See Paragraph 4(i) and (k) below.)

We may also cancel, transfer or otherwise make changes to a domain name registration in accordance with the terms of your Registration Agreement or other legal requirements.

(GoDaddy's Uniform Domain Name Dispute Policy, ¶3)

8. TRANSFERS DURING A DISPUTE

**Transfers of a Domain Name to a New Holder**

You may not transfer your domain name registration to another holder (i) during a pending administrative proceeding brought pursuant to Paragraph 4 or for a period of fifteen (15) business days (as observed in the location of our principal place of business) after such proceeding is concluded; or (ii) during a pending court proceeding or arbitration commenced regarding your domain name unless the party to whom the domain name registration is being transferred agrees, in writing, to be bound by the decision of the court or arbitrator. We reserve the right to cancel any transfer of a domain name registration to another holder that is made in violation of this subparagraph.

**Changing Registrars**

You may not transfer your domain name registration to another registrar during a pending administrative proceeding brought pursuant to Paragraph 4 or for a period of fifteen (15) business days (as observed in the location of our principal place of business) after such proceeding is concluded. You may transfer administration of your domain name registration to another registrar during a pending court action or arbitration, provided that the domain name you have registered with us shall continue to be subject to the proceedings commenced against you in accordance with the terms of this Policy. In the event that you transfer a domain name registration to us during the pendency of a court action or arbitration, such dispute shall remain subject to the domain name dispute policy of the registrar from which the domain name registration was transferred.

(GoDaddy Uniform Domain Name Dispute Policy, ¶8)

True and correct copies of GoDaddy's Registration Agreement and Universal Dispute Resolution Policy (UDRP) which incorporate ICANN's Domain Name Dispute Policy are attached hereto as Exhibits 1 and 2 respectively.

Thus, by various agreements GoDaddy exercises control over the offending domain name PAIRSHARE.com and in accordance with those agreements will abide by any order this court issues in conjunction with the lawsuit brought by pair.

16.     In addition to registering the infringing domain name pairshare.com,

Defendant also registered and is using pairshare as a username for the Twitter and Facebook

social networks, which also infringes, dilutes, blurs confuses and otherwise violates

Plaintiff's valuable trademark rights in its PAIR Family of Marks.

17.     According to the Twitter Rules:

**Content Boundaries and Use of Twitter**

In order to provide the Twitter service and the ability to communicate and stay
connected with others, there are some limitations on the type of content that can be
published with Twitter. These limitations comply with legal requirements and make
Twitter a better experience for all. We may need to change these rules from time to
time and reserve the right to do so. Please check back here to see the latest.

***

**Trademark**: We reserve the right to reclaim user names on behalf of businesses or
individuals that hold legal claim or trademark on those user names. Accounts using
business names and/or logos to mislead others will be permanently suspended.

18.     According to the Twitter's Trademark Policy:

**What is a Trademark Policy Violation on Twitter?**

Using a company or business name, logo, or other trademark-protected materials in a
manner that may mislead or confuse others with regard to its brand or business
affiliation may be considered a trademark policy violation.

**How Does Twitter Respond To Reported Trademark Policy Violations?**

When we receive reports of trademark policy violations from holders of federal or
international trademark registrations, we review the account and may take the
following actions:

When there is a clear intent to mislead others through the unauthorized use of a
trademark, Twitter will suspend the account and notify the account holder.

When we determine that an account appears to be confusing users, but is not
purposefully passing itself off as the trademarked good or service, we give the

account holder an opportunity to clear up any potential confusion. We may also release a username for the trademark holder's active use.

We are responsive to reports about confusing or misleading Promoted Tweet and Promoted Trend copy, as well as Promoted Account profile information. For more information, please visit our Trademark Policy for Promoted Products.

\*\*\*

Thus, Twitter requires its users to comply with trademark law and is responsive to will suspend an account and/or release an account to a trademark holder when the username violates trademark rights. (Twitters' Rules and Trademark Policy are attached hereto and incorporated herein by reference as Exhibits 3 and 4, respectively)

19.    According to Facebook Rules:

**Registration and Account Security**

Facebook users provide their real names and information, and we need your help to keep it that way. Here are some commitments you make to us relating to registering and maintaining the security of your account:

1. You will not provide any false personal information on Facebook, or create an account for anyone other than yourself without permission.

2. You will not create more than one personal account.

3. If we disable your account, you will not create another one without our permission.

4. You will not use your personal timeline primarily for your own commercial gain, and will use a Facebook Page for such purposes.

5. You will not use Facebook if you are under 13.

6. You will not use Facebook if you are a convicted sex offender.

7. You will keep your contact information accurate and up-to-date.

8. You will not share your password (or in the case of developers, your secret key), let anyone else access your account, or do anything else that might jeopardize the security of your account.

9. You will not transfer your account (including any Page or application you administer) to anyone without first getting our written permission.

10. If you select a username or similar identifier for your account or Page, we reserve the right to remove or reclaim it if we believe it is appropriate (such as when a trademark owner complains about a username that does not closely relate to a user's actual name).

## Protecting Other People's Rights

We respect other people's rights, and expect you to do the same.

1. You will not post content or take any action on Facebook that infringes or violates someone else's rights or otherwise violates the law.

2. We can remove any content or information you post on Facebook if we believe that it violates this Statement or our policies.

3. We provide you with tools to help you protect your intellectual property rights. To learn more, visit our How to Report Claims of Intellectual Property Infringement page.

4. If we remove your content for infringing someone else's copyright, and you believe we removed it by mistake, we will provide you with an opportunity to appeal.

5. If you repeatedly infringe other people's intellectual property rights, we will disable your account when appropriate.

6. You will not use our copyrights or trademarks (including Facebook, the Facebook and F Logos, FB, Face, Poke, Book and Wall), or any confusingly similar marks, except as expressly permitted by our Brand Usage Guidelines or with our prior written permission.

7. If you collect information from users, you will: obtain their consent, make it clear you (and not Facebook) are the one collecting their information, and post a privacy policy explaining what information you collect and how you will use it.

8. You will not post anyone's identification documents or sensitive financial information on Facebook.

9. You will not tag users or send email invitations to non-users without their consent. Facebook offers social reporting tools to enable users to provide feedback about tagging.

Thus, Facebook enforces Trademark laws and, upon notice, will remove material that

infringes and/or disable the offender's account. (Facebook's Rules are attached hereto

and incorporated by reference as Exhibit 5)

## *Plaintiff pair Networks' Web Site Hosting Business*

20.     Plaintiff offers its web hosting services under, *inter alia*, its marks "PAIR NETWORKS," "PAIR", "PAIR.COM," "PAIR.NET," and "PAIR.ORG," "PAIRHOST.COM", "PAIRHOST.NET," and "PAIRHOST.ORG". These additional members of the PAIR Family of Marks have been extensively and continually promoted internationally and within the United States since at least the founding of Plaintiff in 1998.

21.     Since pair Networks pioneered the field of web hosting in 1995, it has grown to host hundreds of thousands of web sites and over one hundred thousand pairList mailing lists from customers from over 100 different countries.  pair Networks has been and continues to be a leader in the web hosting field.  It is now one of the largest privately-held and independently-operated web hosting providers in the world.

22.     pair Networks hosts hundreds of thousands of web sites for customers from over 150 countries.  It has thousands of Web servers located in Pennsylvania, Ohio, and Nevada.  The servers of pair Networks have over 1 (one) Petabyte (PB) of storage connected to the Internet and on a typical day deliver billions of Web hits per day via their servers.  By virtue of the Internet, the significant majority of pair's customers come into the pair's family through its web sites, *pair.com*, *pair.net*, and *pair.org*, or other web sites incorporating the pair name.

23.     As many entities desire to create a presence on the Internet, they are discovering that, for a variety of reasons, they do not wish to commit the resources necessary to have their own equipment host their domain name.  Thus, a market has developed for

providing the necessary equipment and expertise to relieve the owners of a domain name from the burdens of creating a presence on the Internet. This is part of a growing industry shift to manage software on behalf of corporate customers, in effect renting the programs out as monthly subscriber services and relieving customers of the need to keep large in-house technical staffs.

24.     Substantial amounts of time, effort, and money have been expended in ensuring that the public associates the PAIR Family of Marks exclusively with Plaintiff. As a result of this time, effort, and money invested, Plaintiff has achieved a reputation for providing quality services and information in the field of web hosting. Plaintiff enjoys a substantial demand for and use of such services as well as tremendous goodwill in the PAIR Family of Marks.

*pair Networks' Famous Family of PAIR Marks*

25.     Plaintiff owns the following U.S. Registered trademarks:

| Mark | Int'l Class | Reg. Date | Registration No. |
|---|---|---|---|
| PAIR NETWORKS | 42 | 07/14/1998 | Reg. No. 2,172,950 |
| PAIR NETWORKS and Design | 42 | 09/18/2001 | Reg. No. 2,490,582 |
| PAIRNIC | 42 | 01/08/2002 | Reg. No. 2,527,469 |
| PAIRLIST | 38 | 07/23/2002 | Reg. No. 2,597,075 |
| PAIRLITE | 42 | 01/08/2008 | Reg. No. 3,366,746 |
| PAIRLITE and Design | 42 | 04/08/2008 | Reg. No. 3,410,595 |

| PAIRCOLO | 42 | 03/10/2009 | Reg. No. 3,587,926 |
|----------|-----|------------|--------------------|
| PAIRVPS  | 42 | 02/23/2010 | Reg. No. 3,752,227 |
| PAIR     | 42 | 03/16/2004 | Reg. No. 2,822,208 |

for among other things: "providing web page hosting services on a global computer information network," "providing domain name registration services through a global computer network," "colocation services," and "providing bulk email list hosting services" (collectively the "PAIR" marks).These registrations are valid, unrevoked, subsisting, and constitute *prima facie* evidence of pair Networks' exclusive ownership of these marks.  True and correct copies of the print outs from the U.S. Patent and Trademark Office web site are attached to the Complaint as Exhibit 6.

    26.    Plaintiff owns common law rights to additional marks in the PAIR Family of Marks, the dominant portion of which are PAIR, these marks include pairSim pair Network's Software Installation Manager and pairIncubator a Web technology incubator operated by pair Networks.  (See Exhibit 7 and Exhibit 8, respectively, attached hereto and incorporated herein by reference).

    27.    Plaintiff makes a downloadable software application for mobile computing devices available under the brand name PAIR.

    28.    Thus, pair Networks uses its PAIR marks on a variety of goods and services outside of the services set forth in its U.S. Registrations, including software applications, clothing and tote bags.  See, for example, Exhibit 9 attached hereto and incorporated herein by reference.

29.    pair Networks has used its PAIR marks and advertised them in promotional materials and/or used them in everyday sales activities in such a manner as to create common exposure and thereafter recognition of common ownership based upon their common formative PAIR. thus creating a PAIR Family of Marks.

30.    The PAIR Family of Marks is a group of marks having the recognizable common characteristic of PAIR composed with another word such that the public associates not only the individual marks, but the common characteristic of the family with the Plaintiff. Thus, the purchasing public recognizes that the common characteristic of the formative PAIR is indicative of the origin of the goods.

31.    Plaintiff has and continues to use and advertise its PAIR Family of Marks in promotional material and everyday sales activities in such a manner as to create common exposure and recognition of common ownership based upon the PAIR formative of each of Plaintiff's marks.

### Ongoing Enforcement of the Famous PAIR Family of Marks

32.    Plaintiff pair Networks has invested substantial resources to aggressively protect its invaluable PAIR Family of Marks.

33.    pair Networks regularly sends cease and desist letters to any third parties using the PAIR formative to market goods or services.

34.     Over the years, pair Networks has filed trademark infringement lawsuits against third parties who were using the formative PAIR whether or not closely related to the goods and services with which the PAIR Family of Marks is associated and marketed.

35.     These enforcement efforts have been met with great success.

36.     The PAIR marks have been recognized as famous both nationally and internationally.

37.     Most recently, in *Pair Networks, Inc. v. Lim Cheng Soon and Richerd Chan* (W.D. Pa.), Civil Action No. 2012-896, Judge McVerry filed a decision and order finding, *inter alia*, "Plaintiff [pair] has established a PAIR Family of Marks. The trademarks comprising the PAIR Family of Marks are nationally and internationally known and associated with pair Networks' products and services, and are thus "famous" under 15 U.S.C. § 1225(d)." (February 6, 2013 Slip Op. at p.4, ¶9, attached hereto and incorporated herein as Exhibit 10).

38.     Judge McVerry further found as fact that "Making a downloadable software application for mobile computing devices available under the PAIR trademark is within the natural zone of expansion of the PAIR trademarks. *Id.* at ¶19.

39.     Judge McVerry also found as fact that "Making a downloadable software application for mobile computing devices is within the natural zone of expansion of the PAIR Family of Marks." *Id.* at ¶21.

40.     In *Pair Networks, Inc. vs. Joaquim Rodrigues* (W.D. Pa.) Civil Action No. 2010-01122, Judge Lancaster entered a decision and order finding that "pair Networks marks are nationally and internationally known and associated with pair Networks' products and services, and are thus 'famous' under 15 U.S.C. §1125(d)." (See copy of October 8, 2010 Decision and Order, attached hereto as Exhibit 11 and incorporated herein by reference.)

41.     Accordingly, Judge Lancaster entered an order prohibiting the defendant from "using the word 'pair' in a trademark sense, in any language, or though synonym or homonym, in connection with any Internet service provider, application service provider, software, or Internet related service." *Id.* at 5.

42.     Other courts have also entered orders confirming the fame of the PAIR marks. For instance, in *pair Networks, Inc. v PEAR.NET*, Civil Action No. 00-301-A, the Eastern District of Virginia specifically found that the PAIR marks were "nationally and internationally known and associated with pair Networks' products and services." (See copy of July 21, 2000 Slip Op. at p.11 (E.D. Va. 2000), attached hereto as Exhibit 12 and incorporated herein by reference.)

43.     A similar order was entered in the case of *pair Networks, Inc. v. Shiloh Jennings, d/b/a PAIRNET WEB HOSTING.* See Order of Court, December 9, 1999 (W.D. Pa. 1999), p.2, a copy of which is attached hereto as Exhibit 13 and incorporated herein by reference. (Defendant is enjoined from using the word "pair" in a trademark sense in connection with software.)

*Policing the United States Patent and Trademark Office for Third Party Filings*

44.     Plaintiff pair Networks' enforcement policy includes reviewing the United States Patent and Trademark Office trademark filing docket, identifying third party applications that might cause confusion in the market place, might dilute the PAIR Family of Marks or might allow a third party to overlap and expand into Plaintiff pair Networks' trade channels and consumer influence regardless of the third party's goods or service.

45.     As an example, this policing activity has been successful in limiting, *inter alia*, the registration of PAIR formative marks for Internet associated computer software and hardware in International Class 009.

46.     Indeed, in International Class 009, there are only 11 registered marks including the formative PAIR.  See April 24, 2012 report from the United States Patent and Trademark Office Trademark Electronic Search System (TESS) attached hereto and incorporated herein as Exhibit 14.  None of these registered marks are for Internet associated computer software or hardware.

47.     In the case of *pair Networks, Inc. v Lanish Enterprises Limited* (Opposition No. 91178438), decision filed June 18, 2008), the United States Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") sustained pair Networks' opposition of the mark "PAIR & GO" for a myriad of computer hardware and software related goods in international class 009.  A copy of the TTAB decision is attached hereto, and incorporated herein by reference as Exhibit 15.

### *The Defendant's Unauthorized Use of PAIRSHARE*

48.     Subsequent to pair Networks' use of the PAIR Family of Marks, and without the consent of pair Networks, Defendant registered the domain name *pairshare.com* through GoDaddy on September 7, 2010. (See Exhibit 16).

49.     The *pairshare.com* domain name is directed to a web site that promotes a downloadable software application named Pairshare created and made available by Defendant. A true and correct copy of a printout of the home page associated with *pairshare.com* domain name is attached hereto as Exhibit 17.

50.     Defendant sells its infringing Pairshare software application through the Apple Itunes store.

### The Defendant's Use of PAIRSHARE is within the Natural Zone of Expansion for Plaintiff

51.     Defendant's software application for mobile phones was within the natural zone of expansion of the Plaintiff's goods and services at the time Defendant began using the mark PAIRSHARE. One of Plaintiff's competitors introduced software for mobile phones, i.e the iPhone, in 2010 and the software was named one of Apple's "Top Free Applications for Business". (See Exhibit 18)

52.     Other competitors of Plaintiff have also introduced software for mobile phones as has Plaintiff itself.  See Exhibit 19 and Exhibit 20, respectively.

53.     Presently, Plaintiff has expanded into and is occupying the natural zone of software applications for mobile phones.

**First Cause of Action**
**Trademark Infringement**

54.   Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 53 of the Complaint as set forth above.

55.   The PAIR Family of Marks has been extensively and continually promoted internationally and within the United States, with "PAIR NETWORKS" being promoted since at least the founding of Plaintiff.  Substantial amounts of time, effort, and money have been expended in ensuring that the public associates the PAIR Family of Marks exclusively with Plaintiff.  As a result of this time, effort, and money invested, Plaintiff has achieved a reputation for providing quality good, services, and information in the field of web hosting. Plaintiff enjoys a substantial demand for and use of such good, services, and information as well as tremendous goodwill in its trademark.

56.   By virtue of the extensive scope of the consumer uses and the substantial sums spent to promote Plaintiff's PAIR Family of Marks, said names and marks have acquired a strong secondary meaning in the minds of the public and business community, and now uniquely identify Plaintiff's goods, services, and information. Through widespread and favorable public acceptance and recognition, the PAIR Family of Marks has become an asset of incalculable value as a symbol of Plaintiff's services and goodwill.

57.   Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits the use in commerce, without the consent of the registrant, of

...any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or

services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive...

52.     The Defendant's use has caused, and is likely to cause, confusion as to the source, sponsorship, or origin of the services offered through the *pairshare.com* domain name, the PAIRSHARE username for Facebook and Twitter and the PAIRSHARE software application.

53.     Among other things, *pairshare.com* confuses Internet users searching for information about pair Networks, and misleads users who are searching for Plaintiff's site, but land on the *pairshare.com* site. The *pairshare.com* site hinders pair Networks' own ability to offer its services in commerce, including its own software applications, over the Internet and is an inevitable source of confusion. The Defendant is thus infringing the federally registered PAIR Family of Marks in violation of Section 32(1)(a) of the Lanham Act.

54.     On information and belief, the Defendant's infringement of the PAIR Family of Marks was and is conducted with actual knowledge of the reputation of and goodwill inherent in Plaintiff's marks, and Plaintiff's ownership of said marks.

55.     Upon further information and belief, Defendant's unlawful violation of Plaintiff's rights in its trademarks is flagrant and intentional.

56.     As a proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits.

57.     Plaintiff has no adequate remedy at law for the infringement of its trademarks alleged herein. Unless Defendant are enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

**Second Cause of Action**
**(Federal Dilution)**

58.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 57 of the Complaint as set forth above.

59.     As a direct result of Plaintiff's long and extensive experience, care, and skill in providing web site hosting, domain registration, colocation and related Internet services under the PAIR Family of Marks, Plaintiff's marks have become famous within the meaning of 15 U.S.C. § 1125.

60.     Because Plaintiff's services have gained a reputation for superior quality and excellence, the PAIR Family of Marks have gained substantial fame, renown, and good will.

61.     Because of the similarity of the Plaintiff's PAIR Family of Marks and the Defendant's mark PAIRSHARE, the consuming public of the United States is likely to, has and will make an association of those marks and that association has and will impair the distinctiveness of Plaintiff's marks.

62.     By using the words PAIRSHARE, the domain name PAIRSHARE.com and the Facebook and Twitter username PAIRSHARE, the Defendant have caused and continue to cause irreparable injury to and dilution or a likelihood of dilution of the PAIR Family of Marks distinctive quality in violation of pair Networks' rights under 15 U.S.C. § 1125(c).

The Defendant's use dilutes, blurs, tarnishes, and whittles away the distinctiveness of the PAIR Family of Marks. The Defendant's acts are misappropriating the good will of the PAIR Family of Marks.

63.     On information and belief, the Defendant's dilution of the PAIR Family of Marks was and is conducted with actual knowledge of the reputation of and goodwill inherent in Plaintiff's marks, and Plaintiff's ownership of said marks. On further information and belief, Defendant's unlawful violation of Plaintiff's rights in its trademarks is flagrant and intentional.

64.     As a proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, and reputation.

65.     Plaintiff has no adequate remedy at law against this dilution of and injury to business reputation. Unless Defendant are enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

### Third Cause of Action
### (Federal Unfair Competition)

66.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 64 of the Complaint as set forth above.

67.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that

Any person who, on or in connection with any goods or services,...uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

68.     Through the acts described above, the Defendant has engaged in statutory unfair competition.  By making unauthorized use, in interstate commerce, of PAIRSHARE or variations thereof in connection with services that are not part of pair Networks or otherwise affiliated with, endorsed, or sponsored by pair Networks, the Defendant has used a "false designation of origin" that is likely to cause confusion, mistake, or deception as to the affiliation or connection of the services offered under PAIRSHARE and the PAIRSHARE.com web site with pair Networks, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     On information and belief, the Defendant's statutory unfair competition was and is conducted with actual knowledge of the reputation of and goodwill inherent in Plaintiff's marks, and Plaintiff's ownership of said marks.  On further information and belief, Defendant's unlawful violation of Plaintiff's rights in its trademarks is flagrant and intentional.

70.     As a proximate result of the acts of Defendant as alleged herein, Plaintiff has suffered and will continue to suffer damage to its business, goodwill, and reputation.

71.     Plaintiff has no adequate remedy at law against this dilution of and injury to business reputation.  Unless Defendant are enjoined by this Court, Plaintiff will continue to suffer irreparable harm.

### Fourth Case of Action
### (Unfair Competition)
### 54 Pa. C.S. §1124 and Common Law

72.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 70 of the Complaint as set forth above.

73.     The Count seeks a remedy for the Defendant's multiple acts of trademark infringement, dilution and unfair competition in violation of the statutory and common law of the Commonwealth of Pennsylvania.

74.     The Defendant's activities complained of herein constitute the unfair appropriation of the PAIR Family of Marks in the District and the reputation and good will associated therewith.

75.     The Defendant's activities constitute, *inter alia*, unfair competition, infringement of registered and common law trademarks, passing off, deceptive advertising, unfair trade practices, dilution to the distinctive quality of the PAIR Family of Marks and injury to Plaintiff pair Networks, Inc.'s reputation.

76.     The Defendant's activities have been carried out with bad faith and with full knowledge of Plaintiff pair Networks, Inc.'s valuable and long existent rights in the PAIR Family of Marks.

77.     The Defendant adopted the PAIRSHARE name intentionally, in reckless and willful disregard of Plaintiff pair Networks, Inc.'s rights.

78.     The Defendant's complained of activities have caused and will continue to cause damage to the rights of Plaintiff pair Networks, Inc. in its PAIR Family of Marks and to the business reputation and goodwill of pair Networks, in Pennsylvania and elsewhere.

79.     Without the Court's intervention, Plaintiff pair Networks, Inc. will continue to suffer irreparable harm to its business, goodwill, and property for which there is no adequate remedy at law.

80.     Solely because of the Defendant's conduct and complained of activities, Plaintiff pair Networks, Inc. has suffered actual damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as follows:

1.     That the Defendant be ordered to discontinue the use of the *pairshare.com* domain name set forth in this Complaint and further be ordered to cooperate in the immediate transfer of such registration rights to pair Networks.

2.     That Defendant be ordered to discontinue use of the Facebook username PAIRSHARE and turn control of the Facebook account over to Plaintiff.

3.     That Defendant be ordered to discontinue use of Twitter username PAIRSHARE and turn the control of the Twitter account over to Plaintiff.

4.     That Defendant, their agents, servants, employees and representatives and all other persons, firms or corporations in active concert or participation with them, be permanently enjoined and restrained from:  (1) using in any manner in connection with any of its services, or in connection with any advertising or promotions of such services, the domain name PAIRSHARE.com , the word PAIR, and the word PAIRSHARE and any colorable imitation, homonym, or synonym thereof, and (2) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective users of Defendant's services, as to the source of services provided, produced, distributed, sold or offered for sale thereby, or likely to deceive members of the public or the trade, or prospective purchasers, into believing that there is some connection between Defendant and Plaintiff or that Defendant's services are affiliated, distributed, sold or offered for sale with Plaintiff's authorization;

5.     That Defendant, pursuant to 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which it has complied with the injunction;

6.     That Defendant, pursuant to 15 U.S.C. § 1118, be ordered to deliver up for destruction all media, packages, wrappers, receptacles, and articles in its possession bearing the marks PAIRSHARE or PAIR or any reproduction, counterfeit, copy, or colorable imitation, homonym, or synonym thereof, and all plates, molds, matrices, and other means of making the same;

7.     That Defendant account for and pay over to Plaintiff all of the profits realized by Defendant, or others acting in concert or participation with Defendant, from the sale and distribution of their goods and services in connection with the unauthorized use of PAIRSHARE and Defendant's unfair methods of competition as alleged herein;

8.     That Plaintiff recover its damages sustained as a result of Defendant's dilution, unfair competition and infringement of Plaintiff's marks;

9.     That Plaintiff be awarded three times Defendant's profits or three times Plaintiff's damages, whichever is greater, together with its reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and (b);

10.     That Plaintiff be awarded statutory damages pursuant to the provisions of 15 U.S.C. § 1117(d);

11.     That Plaintiff recover the costs of this action; and

11.     That Plaintiff be granted such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: 4.29   , 2013

/s/ Steven B. Larchuk
Steven B. Larchuk
Pa. ID No. 32538
larchuk@larchuklaw.com

LARCHUK LAW OFFICES, P.C.
409 Broad Street
Sewickley, Pennsylvania 15143
(412) 749-1882

- and -

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ference.com

/s/ Brian Samuel Malkin
Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 - Telephone

Attorneys for Plaintiff
   pair Networks, Inc.

## LISTING OF EXHIBITS

Exhibit 1 ................................GoDaddy Registration Agreement

Exhibit 2 ................................GoDaddy UDRP

Exhibit 3 ................................Twitter Rules

Exhibit 4 ................................Twitter Trademark Policy

Exhibit 5 ................................Facebook Terms

Exhibit 6 ................................U.S. Trademark Reg. No. 2,172,950, U.S. Trademark Reg. No. 2,490,582, U.S. Trademark Reg. No. 2,527,469, U.S. Trademark Reg. No. 2,597,075, U.S. Trademark Reg. No. 3,366,746, U.S. Trademark Reg. No. 3,410,595, U.S. Trademark Reg. No. 3,587,926, U.S. Trademark Reg. No. 3,752,227, and U.S. Trademark Reg. No. 2,822,208

Exhibit 7 ................................web page on pairSim

Exhibit 8 ................................web page on pairIncubator

Exhibit 9 ................................print-out from cafepress.com showing "pair" brand items

Exhibit 10 ................................February 6, 2013 Judgment, *Pair Networks, Inc. vs. Lim Cheng Soon and Richerd Chan*, Civil Action No. 2012-00896 (W.D. Pa. 2013).

Exhibit 11 ................................October 8, 2010 Judgment, *Pair Networks, Inc. vs. Joaquim Rodrigues,* Civil Action No. 2010-01122 (W.D. Pa. 2010)

Exhibit 12 ................................July 21, 2000 Judgment, *pair Networks, Inc. v PEAR.NET* Civil Action No. 2000-301-A (.E.D. Va. 2000)

Exhibit 13 ................................December 9, 1999 Judgment, *pair Networks, Inc. v. Shiloh Jennings, d/b/a PAIRNET WEB HOSTING.* (W.D. Pa. 1999)

Exhibit 14 ................................April 24, 2012 report from the United States Patent and Trademark Office Trademark Electronic Search System (TESS)

Exhibit 15 ................................*pair Networks, Inc. v Lanish Enterprises Limited* (Opposition No. 91178438), decision filed June 18, 2008

Exhibit 16 ................................WHOIS printout for PAIRSHARE.com

Exhibit 17 ................................print-out from PAIRSHARE.com web site

Exhibit 18 ................................Web Host Go Daddy's Mobile App Passes 500,000 Downloads, October 1, 2012 http://www.thewhir.com/

Exhibit 19 ................................home page for android app for godaddy-mobile

Exhibit 20 ................................home page for android app for name.com